On Rehearing.
DAWKINS, X
On this rehearing the only question remaining before the court is as to the amount of damages which the plaintiff should recover; all other issues, including the fact of the breach of contract and the liability of the defendant for such damages as may have been proven, having been concluded by - our former decree which denied the application of defendant for a rehearing.
The nature and character of the proof tendered by the plaintiff were fully discussed in our former opinion, as well as the difficulties and uncertainty confronting us in an effort to find a substantial basis upon which to ground a compensatory judgment in his favor.
[6] We have again carefully considered the matter, and are still strongly impressed with the idea that the principal motives and considerations actuating the parties in making the contract were, as to defendant, the disposing of what was then viewed as a waste product, which it would otherwise have had to burn at some expense to itself; and, as to plaintiff, the controlling purpose was the obtaining of a supply of cheap fuel. This is borne out by the fact that defendant had been making no other disposition of the shavings prior to that time (burning them), and for 18 months after the making of the contract only a limited portion was. used by plaintiff for his own fuel; the remainder being burned as before. We do not think, therefore, that it was reasonably within the contemplation of either party that any such enormous profits were to be made as those claimed by plaintiff, and really doubt that even the latter himself thought of such a thing at that time, and until long after the contract had been made. As pointed out in our former opinion, this view is very strongly supported by the solemn allegations of the plaintiff in. his pleadings in the federal court that the shavings had no market value.
*141 Under these circumstances, in the absence of fraud or bad faith, all that plaintiff would have been entitled to recover for the breaching of the contract was the difference in the price which he had to pay for fuel, plus such loss as he may have suffered by the expenditures in erecting the blowpipe to handle the shavings.
Defendant seems to have carried out its part of the agreement for 18 months, and until legitimate circumstances of its business (referred to in our former opinion) made it impossible to dispose of the entire waste in that way, when it adopted the plan of delivering the product to plaintiff to supply the needs of his plant by wagon. It was at this point that the suit in the federal court was instituted to compel specific performance by use of the blowpipe, and which that court declined to enforce. This took the controversy up to 1911, and no doubt it was because of the strong language of that court, which held that tnere was a lack of mutuality in the contract, that actuated the defendant in declining to proceed further with delivery from May 31st of that year.
[7] As was said in the original opinion herein, we do not think plaintiff should be permitted to avail himself of the markets and facilities which defendant created for disposing of the surplus shavings. The reasons therein given, we think, are sound.. However, the proof is positive that the Kent-wood Ice Company was a customer of plaintiffs for these shavings before defendant decided to refuse any further deliveries, and according to defendant’s own records, between June 1, 1911, and September 30, 1914, it (defendant) actually sold and delivered to and collected from this customer of plaintiffs $2,934 for the same shavings which we have every reason to assume plaintiff would have sold. The record also indicates that plaintiff would at least have been able to continue the sale to the Kentwood Ice Company, for the remainder of the life of his contract, that is, until November 19, 1916. According to our calculations, this would have .given him, at the same rate of $75.20 per month, an additional profit of $2,100, or a total from this source of $5,034. In view of the fact that defendant discontinued the delivery of the shavings altogether, we think that it did so at its own risk, and was acting in legal bad faith after May 31,1911, and that plaintiff is entitled to recover for the consequential damages which he has proven with legal certainty, and the item thus mentioned we find has been so established. R. C. C. art. 1934.
As pointed out by defendant’s counsel, it affirmatively appears from the record that plaintiff paid for these same shavings for fuel at his light plant, not counting times when it was operated in the daytime, an average of $117.50 per month, including the expense of hauling, which he would not have had to incur if defendant had continued the use of the blowpipe. Hence we think plaintiff is also entitled to recover at the rate of $117.50 per month, as the cost of his own fuel, from June 1, 1911, to November 18, 1916 (the date of the expiration of the contract under the right of renewal) a period of- 65% months, or a total of' $7,696.25. From this latter amount must be deducted the $25 per month (for 65% months) which plaintiff had to pay defendant under the contract, or $1,-637.50, as well as the estimated cost of repairing the blowpipe after it was blown down in September, 1909 (which repairs defendant refused to permit) of $182.90, or a total to be deducted of $1,820.40, and leaving balance, due plaintiff on account of his own fuel, of $5,875.85.
For the reasons assigned, it is therefore ordered, adjudged, and decreed that our former decree be set aside, and the judgment appealed from be, and the same is hereby, amended by reducing it to the sum of $10,909.-85, and, as thus amended, it be affirmed; *143 plaintiff to pay the costs oí this appeal and the defendant the costs of the lower court.
MONROE, O. J., takes no part.
For opinion of PROVO STY, J., dissenting in part, see 86 South. 683.
On Motion to Modify Decree.
PER OURIAM.
[8] Counsel for plaintiff has filed in this case, since the decision on rehearing, a motion suggesting that our decree on rehearing does not make it plain as to whether the interest allowed at the-legal rate by the lower court was also affirmed. We can see no occasion to construe or misinterpret the decree in question, for it merely reduced the amount of the judgment in plaintiff’s favor, and affirmed the same in all other respects, which necessarily carries with it the affirmance of the judgment of the district court allowing legal interest as therein set forth.
MÓNROE, O. J., takes no part.